IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY LYNN FREEDLINE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. 21-405 ) |
| KILOLO KIJAKAZI,[1] *Acting Commissioner of Social Security*, | ) ) ) ) |
| Defendant. | |

## ORDER

AND NOW, this 26th day of September 2022, the Court has considered the parties' summary judgment motions and will order judgment in Defendant's favor.[2] The agency's final decision wherein the Administrative Law Judge ("ALJ") denied Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.*, is supported by substantial evidence. Accordingly, it will be affirmed. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (citing 42 U.S.C. § 405(g)).[3]

---

[1] Kilolo Kijakazi is hereby substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d). There is no impact on the case. 42 U.S.C. § 405(g). The Clerk is directed to amend the docket to reflect the substitution.

[2] Defendant has asked not only for judgment in her favor, but also that costs be taxed against Plaintiff. Because the latter request is not supported by argument in her accompanying brief, the Court's Order excludes an award of costs. *See Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 101 F.3d 939, 945 (3d Cir. 1996).

[3] Plaintiff argues that the ALJ's decision finding her to be not disabled is unsupported by substantial evidence because the ALJ erred in his evaluation of medical opinion evidence and formulated her residual functional capacity ("RFC") in a results-oriented way. As explained herein, the Court finds no error in the ALJ's evaluation of the medical opinion evidence nor in the formulation of Plaintiff's RFC. Accordingly, the Court will not disturb the ALJ's decision.

An ALJ's findings "are 'conclusive' in judicial review of [a] benefits decision so long as they are supported by 'substantial evidence.'" *Biestek*, 139 S. Ct. at 1152 (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Pursuant to this deferential standard of review, an ALJ's adequately supported decision is not undermined by the mere existence of "evidence in the record that supports a contrary conclusion." *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 764 (3d Cir. 2009).  ALJs determine disability in five steps, *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999), whereby an ALJ asks "whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work." *Roberts v. Astrue*, No. 02:08-CV-0625, 2009 WL 3183084, at *2 (W.D. Pa. Sept. 30, 2009) (citations omitted); 20 C.F.R. § 404.1520(a)(4)(i)—(v).  Claimants carry the burden of proof through step four.  *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).  Prior to resolving the inquiries at steps four and/or five of the evaluation, an ALJ must formulate a claimant's RFC which represents the most a claimant "can still do despite [his/her] limitations." 20 C.F.R. § 404.1545(a)(1).  The ALJ's RFC determination must be "based on all the relevant evidence in [the claimant's] case record." *Id.*  And, in his or her explanation of the finding, the ALJ must express such reasons for the decision as "build an accurate and logical bridge between the evidence and the result." *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (citations omitted).

Plaintiff's primary argument is that, in formulating the RFC, the ALJ erred in his consideration of the medical opinion evidence.  The opinions at issue are those offered by Plaintiff's treating physician, Dr. Nita Rai-Gohel; consultative examiner, Dr. Christina Sabeh; and another treating physician, Dr. Joshua Lester.  Plaintiff argues that their opinions—particularly as they pertained to Plaintiff's ability to sit, stand, and walk—should have been afforded greater weight.  They were not afforded as great of weight as they ought to have been, argues Plaintiff, because the ALJ failed to consider certain factors that impact weight, such as treating relationship, specialization, and consistency.  ALJs must "evaluate every medical opinion" in a claimant's record.  20 C.F.R. § 404.1527(c).  Opinion evidence is evaluated according to six factors: examining relationship, treating relationship, supportability, consistency, specialization, and other factors.  *Id.*  For claimants, like Plaintiff, who filed applications before March 27, 2017, a treating source's medical opinion may be afforded "controlling weight."  *Id.* § 404.1527(c)(2) (explaining that such weight is appropriate where the treating source's opinion about "the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record").  However, an RFC determination is "an administrative" finding, not a medical one; therefore, an ALJ "is not limited to choosing between competing opinions in the record," nor must he "rely only on a particular physician's opinion." *Sterrett v. Berryhill*, No. CV 17-63-E, 2018 WL 1400383, at *1 n.2 (W.D. Pa. Mar. 20, 2018).

The ALJ formulated an RFC for Plaintiff that included a limited range of sedentary work with the option to "alternate to standing" from sitting and "alternate to sitting" from standing for five minutes every twenty-five minutes.  (R. 20).  He further limited Plaintiff's operation of foot

2

controls, overhead reaching, climbing/balancing/stooping/kneeling/crouching/crawling, and driving. (R. 21). The ALJ also prohibited "work at unprotected heights" or "around moving mechanical parts" and exposure to certain environmental extremes. (*Id.*). Finally, the ALJ added that Plaintiff would be off-task 9% of the time. (*Id.*).

Plaintiff argues that Dr. Rai-Gohel's opinions are inconsistent with this RFC, particularly because Dr. Rai-Gohel opined in 2018 that Plaintiff would be limited to five hours of sitting daily, which is less than the six hours of sitting that is generally associated with sedentary work. SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983). The Court, however, finds no error in the ALJ's consideration of Dr. Rai-Gohel's opinions. In 2016 Dr. Rai-Gohel opined that Plaintiff's spinal stenosis would result in limitation to standing or walking four hours daily, but further opined she would be able to *sit for eight hours daily* with the option to sit/stand at will. (R. 468). She further added some postural limitations. (R. 469). In 2018 Dr. Rai-Gohel produced another opinion. (R. 492). Plaintiff's lumbar spinal stenosis and lumbar radiculopathy with weakness in the left leg were listed as her relevant diagnoses. (*Id.*). Dr. Rai-Gohel opined Plaintiff would be off-task 10% of the time and that Plaintiff could "maintain attention and concentration" for two hours before needing a break. (*Id.*). She further opined Plaintiff would be absent more than four days monthly, (*id.*), and indicated, among other things, that Plaintiff would be far more limited in her postural abilities than she was in 2016. To that end, she opined Plaintiff could "Never" climb stairs/ramps/ladders/scaffolds, balance, stoop, kneel, crouch, or crawl. (R. 495). Contrary to her earlier opinion, Dr. Rai-Gohel opined that Plaintiff could only stand/walk for two hours and *sit for five hours daily*, *i.e.*, she could not manage a combination of sitting/standing/walking that amounted to a full, eight-hour day. (R. 493, 67).

Considering Dr. Rai-Gohel's 2016 opinion, the ALJ explained that her opinion limiting Plaintiff to "a range of sedentary work" and "rarely climb[ing] ramps and stairs," was only entitled to "partial weight" because those opinions were inconsistent with other evidence such as Dr. Rai-Gohel's findings of largely normal musculoskeletal and neurological findings. (R. 26). The ALJ further found those opinions to be inconsistent with evidence Plaintiff cared for two young children. (*Id.*). As for Dr. Rai-Gohel's 2018 statement, the ALJ found that the more extreme opinions therein—*e.g.*, that Plaintiff could sit only five hours daily, could never "perform any postural maneuvers," would be off task 10% of the day, and absent 4+ days monthly—were only deserving of "minimal weight." (R. 27). The ALJ explained that these opinions were "unsupported by the variable, and often normal, clinical musculoskeletal and neurological findings documented on exams" and were "only partially supported by the diagnostic findings." (*Id.*). Additionally, the ALJ explained the opinions were inconsistent with Plaintiff's "range of activities" (*id.*) which, earlier in the decision, he noted to include the ability to sweep the floor, prepare meals daily, take her sons to school, drive, and shop. (R. 23).

To the extent that Plaintiff argues Dr. Rai-Gohel's opinions were supported by evidence such as MRI imaging evidence showing narrowing in Plaintiff's spine with degenerative disc disease, Dr. Rai-Gohel's findings of back tenderness, positive straight-leg raise and weakness in the left leg, and loss of sensation of Plaintiff's left small toe, she merely seeks a re-weighing of

3

evidence the ALJ considered in the first instance. (R. 21—23). Though it is possible that the evidence Plaintiff highlights could have been found to support greater weight determinations for Dr. Rai-Gohel's opinions, that possibility does not undermine the ALJ's adequately supported findings. *See Malloy*, 306 Fed. Appx. at 764. Plaintiff has also argued that the ALJ did not accurately consider Dr. Rai-Gohel's specialty of internal medicine, instead referring to her as a "family doctor" throughout the decision. And, further, that the ALJ did not account for Dr. Rai-Gohel and Plaintiff's treating relationship. The Court likewise finds these arguments to be unpersuasive. Plaintiff has not explained how the distinction between an internal medicine doctor and a family medicine doctor affected her case other than vaguely alleging a failure to consider specialization. Without more than a vague allegation as to the difference this error would have made, the Court finds no remedial action is necessary. *See Holloman v. Comm'r Soc. Sec.*, 639 Fed. Appx. 810, 814 (3d Cir. 2016) (explaining the application of the harmless error doctrine in social security disability matters). As to treating relationship, the ALJ clearly acknowledged the nature of Plaintiff's relationship with Dr. Rai-Gohel in his review of the evidence. The Court will not demand more—ALJs are neither required to articulate their consideration of each 20 C.F.R. § 404.1527(c) factor, *Phelps v. Colvin*, No. 15-257, 2017 WL 372738, at *2 (W.D. Pa. Jan. 26, 2017), nor are they required to use "particular language." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)

   Plaintiff has also argued that the ALJ erred in failing to explicitly consider consistency among Dr. Rai-Gohel's opinions, Dr. Sabeh's consultative examination and opinion, and Dr. Lester's opinion. Dr. Sabeh found upon examination that Plaintiff was in "no acute distress" with a "normal" gait. (R. 473). Her strength was found to be full in the upper and lower extremities and her diagnosis was "[c]hronic low back pain with radicular symptoms due to spinal stenosis." (R. 474). Dr. Sabeh opined that Plaintiff would be able to sit, stand, and walk two hours at a time each without interruption, and further opined that she could sit, stand, and walk for four hours each daily. (R. 477). For postural activities, Dr. Sabeh opined that Plaintiff could climb, balance, stoop, kneel, crouch, and crawl "Frequently." (R. 479). Dr. Lester provided no opinion as to off-task time, but opined Plaintiff would be absent from work four or more times monthly and would be able to stand/walk for four hours daily and sit four hours daily with the option to sit or stand at will. (R. 887). He further opined Plaintiff could never climb or crawl, and could only rarely balance, stoop, kneel, or crouch. (R. 889). Insofar as these opinions are consistent with one another—*e.g.*, the overlap in their opinions on the total amount of time that Plaintiff could sit daily—the Court does not fault the ALJ for not specifically calling out that consistency in the decision. As the Court explained *supra*, ALJs are not required to articulate their consideration of the Section 404.1527(c) factors one-by-one. *Phelps*, 2017 WL 372738, at *2. Moreover, the ALJ explained his reasoning for not accepting the opinions as they regarded Plaintiff's ability to sit. For Dr. Rai-Gohel, the ALJ explained that the sitting limitation was only afforded "minimal weight" because it was inconsistent with exam findings and daily activities. (R. 27). For Dr. Sabeh's opinion, the ALJ explained the four-hour sitting limitation was "given little weight" because it was unsupported by "contemporaneous clinical findings" which had been discussed at length elsewhere in the decision. (R. 27, 23). And for Dr. Lester's opinion, the ALJ referred to the reasons he cited for rejecting parts of Dr. Rai-Gohel and Dr. Sabeh's

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 15) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 18) is GRANTED as specified above.

s/ Alan N. Bloch
                                                                    United States District Judge

ecf:    Counsel of Record

---

opinions to explain why he was not convinced Plaintiff could only sit four hours daily. (R. 27). Further, the ALJ specifically considered *inconsistency* between Dr. Rai-Gohel's opinions and Dr. Lester's opinions to justify his evaluation of the opinion evidence. (*Id.*). The Court finds this consideration of the opinion evidence to be thorough and will not upset the ALJ's determinations of appropriate weights for the medical opinions.

Plaintiff's other argument for remand is that the ALJ's inclusion of a 9% off-task-time limitation in the RFC was results oriented. She argues that the ALJ adopted the 9% figure specifically because the vocational expert ("VE") who testified at Plaintiff's hearing indicated that 10% off-task time would not be tolerated by employers. (R. 74). However, the Court finds no error in the ALJ's determination of the appropriate amount of off-task time for Plaintiff's RFC. The ALJ explained in his decision that the off-task-time limitation included in the RFC was there to accommodate "residual symptoms associated with Lyme disease and slower movement which may result from claimant's back condition and soreness." (R. 28). As the ALJ noted, one opinion in the record supported a 10% off-task limitation, but other opinion evidence did not give any indication as to the necessity of off-task time. (R. 27). As discussed above, the former opinion on off-task-time was partially rejected. (*Id.*). Plaintiff points to no evidence in the record that the ALJ overlooked in assessing the amount of off-task time he included. The ALJ considered important indicia of Plaintiff's ability to focus, such as her self-reported ability to manage finances despite her allegations of impaired focus. (R. 25). The ALJ having considered all evidence that appears to be relevant to off-task time and having adequately explained his rejection of a more significant off-task-time limitation, the Court finds no error in the ALJ's determination that Plaintiff failed to present evidence to justify any more than a 9% off-task-time limitation.

Finally, as Defendant pointed out in her brief, Plaintiff has not pursued the constitutional challenge to the ALJ's authority to decide her claim that was alleged in her complaint. (Doc. No. 3, pg. 2). For all these reasons, the Court will affirm the ALJ's decision.